We're happy to hear your argument in our second case, United States v. Smalls, No. 126021. Mr. Corzine? Yes, may it please the Court. John Corzine from the Wake Forest Appellate Advocacy Clinic. And under Local Rule 46A, it's my pleasure to introduce the two third-year law students who've worked on this case. First, Dylan Greenwood, who's worked on the briefs and will be speaking with the Court today. And second, John Frenaris, who's worked on the briefs and helped prepare for oral argument. Thank you, Your Honor. Thank you all very much. We appreciate your assistance. May it please the Court. Good morning, my name is Dylan Greenwood, and I'm here on behalf of Mitchell Smalls in the appeal of his motion for retroactive sentencing relief under Section 3582. This Court has asked us to address the applicability of Gall to Section 3582 motions, and whether or not there needs to be an individualized explanation in regards to those motions. However, there are two other ways in which this Court could remand the District Court's case back down, and I would like to address those first. The first being that the District Court failed to let Mr. Smalls file a reply brief. Second being that the particular facts and circumstances of this case overcome the presumption that the District Court adequately considered the 3553A factors. Turning now to the issue of the reply brief. Would it make a difference in the analysis if this is a case in which the judge who made the decision at issue today also was the trial judge, and was also the judge who previously considered an earlier motion? Your Honor, in regards to what exactly? As opposed to somebody who inherited the case, let's say. Yes. It really would not, and it would not, first of all, because this is 17 years removed from initial sentencing. Well, doesn't the case law seem to indicate that doesn't make a difference? No, not necessarily. In regards to... Has it been regarded as important in some cases? Perhaps in some cases, but if we look to this court's decision in McKenzie, the first McKenzie case, we see that the District Court was the same court that went through with initial sentencing with prior motions, but that particular 3582 motion was nine years removed from the initial sentencing, and that weighed heavily on that court, especially compared to LaGreve, this court's decision in LaGreve, which was three years removed from initial sentencing. In this particular case, we have the District Court being 15 years removed from initial sentencing, even more so. But beyond that, this court also needs to address the reply brief issue, and that's the fact that the District Court stated that Mr. Smalls would have the opportunity to file a reply brief. He had given an opportunity to file a reply brief in every other motion up until this point. However, the District Court ruled on his order within two days of receiving the government's response. Well, what would he say in his reply brief? The government's response was as skeletal as it could be, and so what would there be to add in the first place? Despite the government's response being skeletal, they did not agree with Mr. Smalls' assessment of wanting a low end of the guidelines. They didn't agree to the extent. But what Mr. Smalls would be able to cite are the things that we brought up in his informal brief. Oh, no, he wouldn't be. He has to make those arguments in his initial brief. The government has stated that there is nothing on which he would be able to show that would be able to make a difference in this case. However, there is evidence to show, and that evidence is— And there might be—I think we're ships passing in the night. You know, there's this rule about you have to put in your initial brief. If you don't put in your initial brief an argument, you waive it. So those arguments that you make here, he didn't make in his initial brief. Your Honor, I would ask you to look to the fact that Mr. Smalls is a pro se individual. I hear you, but the Court Circuit has practically eaten that up. I hear you. We have to be lenient, and we have to construe these pleadings broadly, and there is no way that Mr. Smalls would have known at the time that the government was going to not agree with him on everything in his motion. He was waiting for a point of counsel. He had requested it, and the Court denied him that right. Did you say Mr. Smalls asked for a low guideline sentence? Yes, he did, implicitly, Your Honor. I thought he asked for a top to top. No, Your Honor. He asked for a range. I believe it was 262 to 210, and he asked for the 210 of the range. Okay. That was up in the high. Yes. So the government agreed to grant, but it didn't agree for the low end of the range. And building upon that inability for Mr. Smalls to file a reply brief, and again I would ask this Court to look to the fact that he has the information that he could give would be the 22 vocational and educational courses he has completed, all of his supervisors, he's in the food service part of the Bureau of Prisons, they've all said that he is very trustworthy and would be a benefit to society and would be a very safe person in society, which is a consideration under United States Sentencing Guidelines 1B1.10 that a court must take into account. But building upon this need for a reply brief, the specific circumstances Judge Smith was clearly exercised by what she regarded as her jury's testimony in his sentencing. Is that likely that she was going to forget that when we go through and analyze what happened here? Perhaps not, Your Honor, but a district court must assess the 3553A factors at this moment in time at this particular motion. That could have weighed on her, but we don't know. Well, it was in the form, but the form says in two places that she considered the factors. Why can't we just accept that she said she did what she did? Merely stating that a court has considered the factors is never enough. It is never enough under the standard that is set. But it's not a resentencing. I mean, the law is clear about that. No, Your Honor. We don't advocate that it is a resentencing. However, all we're advocating for is that this Court recognize that Gaul v. United States, the 2007 Supreme Court decision, applied to this Court's decision in United States v. LaGrieve. And under that decision, the district court merely stating that they have considered the factors would never be enough. That does not show individualized sentencing. It does not allow for meaningful appellate review. It does not allow for an appearance of fairness in sentencing. And that's exactly what Gaul does. It overcomes that LaGrieve presumption. Can I just ask you this? Am I right that she wasn't even required to, notwithstanding the retroactivity, she didn't have to reduce the sentence? Is that correct? That's correct, Your Honor. So, I mean, in agreeing to reduce his sentence to the top of the revised guidelines, wouldn't that be consistent with her having represented on something she signed as a judge, the order that she had considered the 3553A factors that she did, and that's why she went to the top of the guidelines? No, Your Honor, because that merely shows that the Court did consider the factors, but it does not show how they considered the factors. And that how factor is the most important here, and that is what we have to follow in regards to Gaul v. United States. We're asking this Court to adopt a rule that a district court is required to articulate the basis for its decision clearly enough so that this circuit court will be able to determine whether the decision is reasonable and to do that. Well, Gaul doesn't say anything about 3582C3, does it? No, it does not, Your Honor. And, in fact, Gaul relied on Rita, and Rita does not apply to 3582C3, does it? No, it does not, Your Honor. However, we would ask that the Court look to the fact that in 2007, when the United States Sentencing Guidelines came out, the application notes for Section 1B1.10, which states the procedure for which a district court has to go through these motions, the application notes were quite sparse. It didn't direct the Court how they should consider, what they should consider. However, in 2008, November 2008, when the new guidelines came out, post-Gaul, all of a sudden the application notes changed to be individualized. The Court, and it copied some of the language from Gaul, has to consider the 3553A factors, has to consider whether or not an individual is going to be a danger to society, and the Court may consider post-conviction conduct. So there are three factors that a Court either has to look at or may look at in regards to this, and that happened, again, post-Gaul. So Gaul has had a big influence on 3582, and it's had a big influence on the rule that we've cited, it came from United States v. Marion, a Seventh Circuit Court. Although it did not cite Gaul specifically, it was consistent with all the reasoning in Gaul, that there needs to be individualized sentencing, and it needs to occur from meaningful appellate review, and out of an appearance for fairness in sentencing. And that has been echoed by other Circuit Courts, that's been echoed in United States v. Howard, a Sixth Circuit case, another post-Gaul case, United States v. Burrell, an Eighth Circuit case, 2010, another post-Gaul case. So this has been recognized, and it needs to occur here. In regards to Gaul's application to Lagree, imagine that Lagree is built on a house of cards. And the bottom two cards are this Court's decisions in United States v. Davis, and United States v. Johnson. And in those two cases, they were both initial sentencing cases, and they set up presumptions on which the Lagree Court relied upon in basing its decision. In United States v. Davis, the presumption was as long as a policy statement was cited, that it was presumed that it was to be considered in the Court's ultimate ruling. In United States v. Johnson, holding that in a non-departure case, there's a presumption absent a contrary indication that a district court considered the factors enumerated in 3553A. However, Gaul takes away those presumptions. What about Dillon? The application of Dillon, it sets forth a two-part analysis for 3582. We don't believe that Dillon applies very much in this case beyond that two-step analysis because it discussed the Booker issues in regards to Sixth Amendment issues. Those don't apply here, and it's obvious that those don't apply here because... The Court does talk about the narrow view of proceedings under 3582C, and it mentions in its discussion that a district court is to consider the factors to the extent they're applicable, and it authorizes a reduction only if such reduction is consistent with applicable policy statements. There's no discussion in Dillon about some requirement on the district court in a proceeding under 3582C to go into an extensive discussion of the factors. We're not asking... It says the Court has to consider them, and Judge Smith said she did. Right. We're not asking for a nuanced factor-by-factor analysis. In fact... Well, you wouldn't be entitled to that under our provision. No, that's not even... So what is the difference between what you're asking for here and what would be given in the regular context, not the 3582 sentencing context? Well, the best way I can think of doing that is to give you an example. So let's take this case, for instance. Let's say that the district court here was still hung up on the things that happened 17 years ago in the initial sentencing, the statements that he made. Under our rule, the district court could say, in considering the 3553A factors, we have decided that out of respect for the law, we have looked back to the prior statements made at the initial sentencing, and out of respect for the law, we have decided to keep the sentence at the high end of the guideline range. This court would then have something to go off of to base its decision. If that decision was then appealed, this court would be able to then assess what the district court was doing. I thought you tied your argument to the factors that gall, et cetera, require a district court to do in regular sentencing. You don't? You disavow gall? No, I do not disavow gall at all. How would that be sufficient under gall? It seems to me like you're in the horns of a dilemma. Either you say that you must hear a sentencing judge do exactly the same analysis that was done in gall, or you have to give us some other analysis. But if you give us the other analysis, then how can you rely on gall as authority for this other analysis? The example I gave you is really no different than what a district court could do at an initial sentencing. Well, he has to go through the factors. But an individual district court judge does not have to go through every single 3553A factors. He doesn't have to go through all the factors, but we have to know that he's looked at those factors. Are you suggesting in the resentencing process we have to know that too? Yes, we have to know what was going through the district court's head. We don't have to know every single factor, but we need to know how the district court considered the factors, not just that they did consider the factors. So there's no difference in your mind between the review that is required in this situation and the review that is required at the initial sentence by the district court? Not much, Your Honor. Well, is there any? Well, none that I can think of off the top of my head. You just gave a suggestion of a shorthand. That is the same reasons that I had for sentencing at the top of the guidelines, I continue to have them. I mean, that's one difference. You obviously wouldn't have that in the initial gall sentencing, but you would have it when you consider the deduction. So that's one. It's a shorthand. But, of course, that presupposes that there is a gall reference that you can make, like we all know about incorporating things by reference. Yes. So you have the valid gall sentence to begin with. So you're saying, well, here you can just incorporate that valid gall sentence. I accept that. Not every instance, Your Honor, because in this particular case, we don't have a valid gall sentence necessarily. He was initially sentenced in 1996 before gall. But each time she's given him the downward departure that is required by the guidelines. Not each time, Your Honor. In the first one, 2004, she denied his initial order under 3582. So you're claiming that the initial sentence is in error. Is that what you're claiming? No, I'm not claiming that at all. Okay, I thought you just told me that, that the initial sentence was in error. All I'm saying is that. Well, is the initial sentence in error? I'm not saying that at all. I'm not saying that the initial sentence. Okay, so it's not in error. No, I'm just saying that it is. Just tell me one way or the other. It is pre-gall. Therefore, it is pre-individualized sentencing. That's all I'm saying about the initial sentence. I'm not saying that it is necessarily in error. So referring back to it and saying I'm doing it for the same reasons that I did the initial sentence would not be sufficient. Is that right? I'm saying that the. Sir, is that right? Because if the initial sentence is pre-gall, so it doesn't have the things in it that gall requires, referring back to it is insufficient. Is that right? It would give this court a directive to understand. You know the business about the perfect is the enemy of the good. All we're looking at here is what's required by the law. You know, if I could make the rules about what you should do, it would be a whole different world. Yes, Your Honor. We would argue that gall does require this individualized assessment. And it does so out of a need for meaningful appellate review and out of a need for fairness in sentencing. The United States sentencing guidelines seem to recognize this when it changed their application notes. Other courts have followed this implicitly because of their consideration of gall. Therefore, it would seem that gall does apply to these section 3582 decisions. And if Your Honors have no further questions, I've reserved the remainder of my time for rebuttal. Thank you. Thank you. Before you begin, maybe you can help me with this last question I had. I thought that she had, the district court, had each time complied with or respected the change in the law. Is that not correct? Yes, that is correct. I think the representation by your colleague was that no, she didn't the first time. So I must be misunderstanding the record. So there's the original sentencing back in the 90s, where the judge had a range of 360 to life and imposed the top end range. Then there's the first amendments, 706 and 711. In those, the range fell to the top end was 405 and the bottom end was 324. Right. And the judge imposed the top end 405. Now under 750, the range fell from that down to 262 to 327. And the court imposed, again, the top end of the range, 327. This is the second modification. Right. And so each time it has been considered. I thought I understood the representation from your colleague was that the first time that the district court had an opportunity to make modifications, she refused to do so. I think that's mistaken. Okay. In Dillon, the Supreme Court held that 3582 reductions are not sentencings or resentencings. They're just modifications in a sentence. And I think a couple of important features flow from that. One is that you have an original sentencing with a valid, individualized explanation for that sentence. Another, I think, important consideration is when an amendment comes out like these crack amendments, the reasons for the amendment often are not individualized. Here it deals with the treatment of drug quantity. And it's perfectly reasonable for a district court to take the position of I'm going to give you this reduction unless there's a really pretty good reason not to do so. And so often the ruling is not going to be terribly individualized. And I think another significant feature is because these amendments work retroactively and cover everyone back to the beginning of sentencing under the guidelines, which would be in the late 80s, there's always a big backlog of people who are nearing the ends of their sentences. And so therefore, there's a need for efficiency that doesn't attach to an original sentencing. Courts want to be able to move expeditiously through these so that people are not over-serving their sentences. And in facilitating that, the administrative office of the courts has created a form, which the district court used here, which gives you the essential information. It shows you that the judge has correctly calculated the guideline range, figured out the full amount of relief available to this defendant, picked that, which gives you exactly the court's determination that there is eligibility here and what the amount of relief available is. And then the court picked a point in that range. And the circumstances allow the court to understand what the court was doing because it's consistent with what the court did in its prior rulings. Well, does this form always say that they're going to give the other party, the defendant, a chance to respond and not do it? Right. The form doesn't say anything about reply briefs. So that was the judge's own volition. Right. Set the schedule, had you respond, and then said she was going to give the defendant a chance to reply. Right. But she didn't. Right. And I think that has to be viewed through the lens of what the defendant argued and what the government said in response. In the defendant's opening brief, he raised essentially, as I counted, two arguments. First, he asked for a sentence of 210 months, which was below the applicable range. So that was relief that wasn't even available to him. And then second, he contested the jury finding about drug quantity, which is also something not cognizable in 3582. So he raised basically two points that the court couldn't even consider. The government in response had essentially one sentence in its response after it correctly calculated the guideline range and showed how the And then it affected the defendant's sentence. There was one sentence that said the government, again, requests the maximum sentence. So the court was looking at opening pleading that raised two points that weren't even cognizable. In a response to that. Mr. Cook, wouldn't it be a de facto that he, you're absolutely right what you said, but by de facto, isn't that tantamount to a request for a low-end sentence? I would agree. I think that's fair. And so he's made that request. So should he be? Well, that leads me to ask then, in the reply brief, could he have gone from there to tell us the very reasons why he isn't entitled to a low-end request? In other words, was the reply brief totally futile? I think it would be viewed in the sense that the government's not able to respond unless it asks for permission to file some extra pleading. It's adding in a lot that's new to the mix. And so I think it would be viewed as falling in the category of new argument. Had the court allowed the defendant to do that, we certainly wouldn't have objected. We probably would have asked to respond to it. But it's not an abuse of the court's discretion to have looked at the very thin arguments it received, the response that just said, do what you did in the past, which is the top end of the guideline range, and then rule. The government never thought of saying to the court, you've told this man you're going to give him a chance to respond. You know, sometimes in court when you're not clear that the court has put something on the record that you want, you say, well, excuse me, there was no suggestion about that here. Well, there wasn't a hearing here, so it was just all paper pleadings. Right, you've had to look at paper. Yeah. And, I mean, the reality of the situation is people file these pleadings because they're trying to go through them quickly because you've got a volume of them and keep their cases going. So, yeah, I mean, frankly, honestly, people file their responses and move on to other tasks. Mr. Cook, may I ask you a hypothetical? If it's just the opposite of what happened here, if on every occasion, including the initial sentence, the district judge gave the low end of the guidelines. Next reduction granted, lowest end. This time, reduction granted, he makes a request, I want the low end again, that's all he says. And same thing happened. She gives, or the district court judge gives the high end without any explanation or an opportunity to respond to his request. Would you have the same case then? Well, presumption and degree is just that. It's a presumption that is rebuttable. And there are definitely going to be circumstances where it would be rebutted if there weren't more on the record. And I think it would matter what the circumstances were when the judge did that as to whether or not more needed to be said. This is not, in the government's view, a situation that's controlled by 3553C, but I think there's language in the Supreme Court's opinion and Rita talking about explanations generally outside of the context of sentencing that is relevant here. And the court said before getting into the discussion required, the type of explanation required in sentencing, the Supreme Court said sometimes a judge simply writes the word granted or denied on the face of the motion while relying on the context of the party's prior arguments to make the reasons clear. The law leaves much in this respect to the judge's own professional judgment. So I think that there's definitely a degree of discretion about how much a district judge has to say in ruling generally on all sorts of different motions outside of the sentencing context. And a viewing court's evaluation of that is going to depend, as the Supreme Court said, on the context and what the party's arguments show and affording deference to the district judge's decisions about how best to manage its caseload in time. And so there would be circumstances, I think, where the presumption would be rebutted and the party's arguments would not, and the context would not make the explanation or the ruling clear. And a viewing court might say, we're just not sure what happened here. And once the court has any further questions, we ask that the court affirm. Thank you very much. Thank you. May it please the court. I apologize if I overstated anything in my initial argument. I just misunderstood. Yeah, I wasn't trying to do anything. I was referring to the initial 2004-3582 motion versus the initial sentencing. I would like this court to recognize the fact that governance council talked about the efficiency of the backlog and getting through that. But I would ask this court to compare that to efficiency of appellate review as well. If we look at this case in particular, the government had to spend six and a half pages of its 32-page brief just outlining the background of the case. And that taped and filed supplemental joint appendix in excess of 40 pages to even understand what went on prior. However, this court has no idea what went into the district court's decision for this particular 3582 motion. Going back to Judge Hollander's question in the beginning, although you say that this is 11 years old or however many years it is, on several occasions this very same district judge not only sentenced your client originally, but on several occasions she had to go back. She had to go back in 2008. She resentenced him. She went back in 2011. So there is a big history here.  We have to honor what district judges do. So she's examined the record. Nobody's challenged those. I understand that, Your Honor. However, this is the first 3582 motion under the revised sentencing guidelines with the application notes that are consistent with Gall, that she has to consider the 3553A factors, that she has to consider his safety or the public safety. But you have to make the bridge between this context and Gall. Well, Gall has effectively linked court's responsibility to explain the logic and the duty to consider. 3582C2, 3553A both compelled court to consider these individual characteristics and the circumstances surrounding a case. And then Gall then linked those together. That's what's happened here. Furthermore, LaGrieve, the reasoning on which, was based off two presumptions that Gall eliminated. It rejected the reasoning on which LaGrieve was based by taking away those presumptions. We would ask this court. What I guess I would be curious to know is what would have passed muster? What would have been enough in your mind? Similar to what you've been asked before, but I guess I'm still struggling with it. What would the judge have had to say that you would have said was sufficient to show she considered the factors beyond her representation that she did? In other cases in other circuits, there's been a few years out, the district court has incorporated the government's response to the initial brief. They've incorporated the reasons of that. Is that sufficient? We're not asking for what precedent is. We're asking you for what you think is necessary for the district court to do. Would that be sufficient? She incorporated the government's response? I believe so, Your Honor. Just something for this court to go on so they don't have to speculate what the district court did. It is three judges at this level doing, and if this doesn't occur, it is one judge at the district court level doing a little bit of work, extra work, versus- A little bit of extra work in the context of an extremely busy court, and this defendant had already had two proceedings. One was a full-fledged sentencing in which there was testimony taken. The judge presided at the proceedings. I mean, when you isolate one thing, it may seem like it's not a very difficult task to ask the district judge to do, but if you're the district judge and you're doing lots of other things, trying cases, holding proceedings, motion hearings, filling out forms like this, it's a lot. And you've already done it. How many times do you have to do the same thing over? I understand that, Judge Hollander. All that we're asking is for a basic explanation of what- the district court has to consider the factors anyway. They have to consider them to grant the motion. They have to consider them to the extent to which they grant it. But isn't it significant that she didn't even have to go? She had discretion. She didn't even have to revise the sentence at all, and she did it. Yes, she did, and that is indication that she considered the 3553A factors, but we don't know how she considered the 3553A factors. Counsel, the problem is, as Mr. Cook conceded in my hypothetical, there are circumstances where it would need more because it's such a reverse of low-end, low-end, then high-end, no explanation opportunity. But in this case, this is a defendant that the judge sentenced to life in prison. Life. That gives you a pretty good idea of what she felt was a sufficient sentence, and was it appealed? Yes, he had a habeas appeal, yes. Exactly. So it's direct and collateral, and it's now the law of the case clearly, and so it's not a lot of mystery when reduction comes, which is automatic unless there's some extraordinary circumstances, that she continues to give the high-end. What mystery is there? We understand that, Your Honor. However, this is a procedural requirement set forth in Gaul, and her merely stating that the court has considered the 3553A factors is never enough to satisfy the Gaul standard. And we would ask this court to please remand and instruct the court to file for to give Mr. Smalls the opportunity to file a reply brief, and two, to give sufficient reasons for explaining the decision behind their assessment of his sentence, either for the fact that the LaGrieve presumption does not hold, or because Gaul rejects the reasoning on which the United States First List LaGrieve was based. Thank you, Your Honor. Thank you very much. We appreciate your argument, and we particularly appreciate that you have dominated this service. You always do. You're law school proud. We will come to ask the clerk to adjourn the court for a moment, and then we'll come down and greet the court.
judges: Diana Gribbon Motz, Roger L. Gregory, Ellen L. Hollander